SOULES *v.* SOULES.

CANCELLATION OF INSTRUMENTS—DEEDS—INCOMPETENCY.

On a bill by a son and daughter for the cancellation of certain deeds whereby the title to a house and lot owned by the father was placed in him and defendant, his second wife, by the entireties, evidence *held,* insufficient to establish the incompetence of the father to make said conveyance, and the decree of the court below is reversed.

See note in 3 L. R. A. (N. S.) 174.

Appeal from Barry; Smith, J. Submitted June 19, 1918. (Docket No. 93.) Decided July 18, 1918.

Bill by Archie F. Soules and another against Mary J. Soules to set aside certain deeds. From a decree for plaintiffs, defendant appeals. Reversed, and bill dismissed.

*Thomas Sullivan*, for plaintiffs.

*Colgrove & Potter*, for defendant.

Plaintiffs who are respectively son and daughter of Friend D. Soules, now deceased, filed their bill of complaint in this case for the purpose of setting aside two deeds by means of which the title to a house and lot was placed in said Friend D. Soules and his wife, Mary J. Soules, as tenants by the entireties. It appears that said Friend D. Soules on June 3, 1914, being then in the neighborhood of 80 years of age, intermarried with the defendant whose age is not disclosed by the record but who is shown to have a grandson 20 years old. On August 1, 1914, about two months after the marriage, the deeds in question were executed. The parties lived together until December 20, 1916, when one Alfred M. Nevins was appointed general guardian of Friend D. Soules and he was removed to the hospital at the Soldiers' Home at Grand Rapids where he died on the 15th day of February, 1917.

It is charged in the bill of complaint:

(1) That the execution of said deeds was brought about through the exercise of undue influence upon said Friend D. Soules.

(2) That at the time said deeds were executed said Friend D. Soules was mentally incompetent to execute said conveyances.

The answer denies all material averments contained in the bill. Plaintiffs introduced the evidence of some

17 witnesses, neighbors and acquaintances of the deceased, Friend D. Soules, who testified as to his physical and mental condition at and after the time of the execution of said conveyances. On behalf of the defendant 11 witnesses were sworn, including the scrivener who drew the instruments in question. The learned circuit judge who heard the case entered a decree in favor of the plaintiffs, holding that there was no proof of undue influence practiced upon Mr. Soules but that:

"I am of the opinion that it is conclusively shown that Friend D. Soules at the time the conveyances were made and executed lacked the mental capacity to comprehend the nature of the business he was engaged in."

From this decree defendant appeals.

BROOKE, J. (*after stating the facts*). As is usual in cases of this character, there is sharp conflict in the testimony. Several of the witnesses sworn for plaintiffs gave testimony tending to show that at the time the deeds were executed Friend D. Soules was old, feeble, and without memory or power to carry on a connected conversation; that he sometimes failed to recognize his acquaintances and on one occasion failed to recognize his own son. On the other hand defendant's witnesses, including the scrivener, testified that, aside from the natural infirmities attendant upon extreme old age, the deceased was competent to understand the nature of the transaction. It is, we think, clear from the record that after the marriage and after the execution of the deeds in question, Friend D. Soules transacted more or less business with apparent intelligence. While it is urged on behalf of plaintiffs that defendant entered into the marriage relation with the deceased from purely mercenary motives, and without any affection or friendship for her

husband, we can gather no such impression from a careful perusal of the record. The parties to the contract were both very old. The deceased was a civil war pensioner drawing $30 per month from the government. The house and lot in question, worth less than $2,000, constituted his entire estate. The disposition of the property effected by the deeds was natural and such an one as is usually commendable.

The plaintiffs' claim is that this case falls within the following line of decisions: *Witbeck* v. *Witbeck*, 25 Mich. 439; *Smith* v. *Cuddy*, 96 Mich. 562; *Whiteley* v. *Whiteley*, 120 Mich. 30, and *Noban* v. *Shoup*, 171 Mich. 191, while the defendant strenuously insists that it falls within the reasoning of *Fraser* v. *Jennison*, 42 Mich. 206; *Hoban* v. *Piquette*, 52 Mich. 361, and *Leffingwell* v. *Bettinghouse*, 151 Mich. 513.

We have carefully perused the testimony of every witness sworn upon the trial of this case and find ourselves unable to agree with the conclusion of the learned circuit judge that the plaintiffs showed "conclusively" or even by a fair preponderance of the evidence that at the time of the execution of said conveyances Friend D. Soules lacked mental capacity to comprehend their nature and significance.

The decree of the court below is reversed and a decree will be entered in this court dismissing said bill of complaint, with costs of both courts to defendant.

OSTRANDER, C. J., and BIRD, MOORE, STEERE, FELLOWS, STONE, and KUHN, JJ., concurred.