*In re* LALIBERTE'S ESTATE.

RAYMOND *v.* MALACOS.

1. Appeal and Error—Judgment Non Obstante Veredicto—Wills
   —Evidence.

   In will contest case where validity of will was challenged on
   grounds of undue influence, mental incompetency and insane
   delusions, judgment for proponent *non obstante veredicto* can-
   not be sustained if there is competent testimony supporting
   verdict on any asserted ground.

2. Wills—Undue Influence—Mental Competency.

   Record in will contest case *held*, insufficient to justify verdict set-
   ting aside the will on the grounds of undue influence or mental
   incompetency of testatrix.

3. Same—Mental Competency—Pain and Suffering—Sedatives—
   Cancer.

   Proof of pain and suffering and use of sedatives at times by
   testatrix afflicted with cancer *held*, insufficient to establish her
   mental incompetency to make a will, especially when the undis-
   puted testimony is that testatrix, with full understanding deter-
   mined each of the various provisions of her will.

4. Same—Old Age—Physical Weakness.

   Under such circumstances neither is proof of old age and physical
   weakness sufficient to establish mental incompetency.

5. Same—Total Disinheritance of Only Child.

   Total disinheritance of an only child is not in and of itself evi-
   dence of mental incompetency of a parent to make a valid will.

6. Same—Undue Influence—Opportunity.

   Proof of mere opportunity to unduly influence a testator is in-
   sufficient to invalidate his will.

7. Same—Undue Influence—Mental Competency—Evidence.

   In will contest case, under record without testimony that testatrix
   was lacking in mental capacity, that she was not mindful of the
   natural objects of her bounty or that she did not fully compre-
   hend the property she possessed and disposition she desired to
   make of it but which showed that she dictated the respective
   provisions to a disinterested attorney through her confidential

business advisor, submission of questions of undue influence and mental incompetency to jury, *held*, error.

8. SAME—INSANE DELUSIONS—QUESTION FOR JURY—CORROBORATION OF TESTATRIX.

In will contest case, evidence *held*, to present issue for jury as to whether there was any foundation in fact for charges of improper conduct on the part of her only living child or whether such charges resulted from an insane delusion, there being no testimony to corroborate testatrix in any material way.

9. SAME—CONTROLLING DISPOSITION OF PROPERTY.

Under record in will contest case containing testimony from which jury might properly infer that alleged insane delusion was operative and controlled disposition made by testatrix of her property, the question of insane delusion was properly submitted to the jury.

10. NEW TRIAL—GENERAL VERDICT—WILLS.

New trial is granted in will contest case submitted to jury on three grounds, where submission on two of the grounds was error and jury returned a verdict invalidating the will without designating upon which ground or grounds it did so.

Appeal from Wayne; Webster (Clyde I.), J. Submitted April 9, 1935. (Docket No. 14, Calendar No. 37,829.) Decided September 9, 1935.

Petition for probate of the will of Georgiana La-Liberte, deceased, by Louise Malacos. Georgiana Raymond filed objections thereto. Certified to circuit court for trial. Verdict for contestant. Judgment for proponent *non obstante veredicto.* Contestant appeals. Proponent cross-appeals. Reversed, with new trial.

*William A. Rankin,* for proponent.

*George E. Brand* (*Orrin C. Jones,* of counsel), for contestant.

NORTH, J. This appeal arises from a will contest. The testatrix, Mrs. Georgiana LaLiberte, died

February 14, 1933, at the age of 75 years. The contested will was executed December 31, 1932. Mrs. LaLiberte was of French descent and had but limited command of the English language. She was married twice and was divorced from each of her husbands. Two children were born of the first marriage, a son and a daughter. The son died some years ago. The daughter, born in 1891, is the contestant in the instant case. She asserts invalidity of the will on the grounds of undue influence, incompetency, and insane delusion. The contest was certified from the probate court to the circuit court of Wayne county and tried by a jury. The case was submitted to the jury on the three grounds above noted and a general verdict rendered against the validity of the will. Thereafter, upon hearing proponent's motion for judgment *non obstante veredicto,* judgment was entered in the circuit court sustaining the will. From the judgment so entered contestant has appealed.

The judgment *non obstante veredicto* cannot be affirmed if the record contains competent testimony tending to establish invalidity of the will on any one of the three grounds upon which its invalidity is asserted by contestant. The estate of which Mrs. LaLiberte died seized was not large. In general it consisted of her household goods, her personal effects, $6,300 on deposit in a bank, and a vendee's interest in a land contract of uncertain value. The testatrix left surviving her as direct descendants her daughter, Georgiana Raymond, and the daughter's three children. By her will, Mrs. LaLiberte left to her daughter $500 and a like amount to each of her three grandchildren. She also left to her only granddaughter, Yoland Raymond, a bedroom suite and all the other furnishings of testatrix' bedroom. Notwithstanding they had been divorced, Mrs. La-

Liberte's second husband lived in the same house with her for some considerable time prior to her death; and the record discloses that he devoted much care and attention to the testatrix during the period of her final illness. To him she also willed $500 and such of her household furnishings and personal effects as were not otherwise disposed of. Mrs. Alfred Touzina, Elizabeth Johnson and Louise Malacos also devoted care and attention to the testatrix during her last illness. To Mrs. Touzina testatrix gave $1,000, her piano and sewing machine; to Mrs. Johnson, $1,000 and to Mrs. Malacos, $500. To Clarina Rivard of Joliet, Quebec, to whom testatrix referred in her will as "my friend," was left the residue of cash after payment of funeral expenses, costs of administration, debts, inheritance taxes, etc. The testatrix was of the Catholic faith and by her will provided $250 for masses and $25 for the Sisters of St. Joseph's Convent.

From the foregoing it is apparent that the testatrix made a detailed disposition of all of her estate. Substantially a year and a half before making the will in contest Mrs. LaLiberte made another will. Aside from four rather unimportant specific bequests, this former will provided that the three grandchildren should receive all the property possessed by Mrs. LaLiberte at the time of her death. Contestant was not mentioned in the former will. An apparent explanation of the attitude of testatrix towards the contestant is that they never had been able to get along in anything like the relations ordinarily existing between a mother and daughter. Instead, when about 15 years of age, the daughter left her mother's home and from that time on until she married did not reside with her mother but instead was cared for and supported by her father who had previously been divorced from the testatrix.

The strained relations, which continued after Mrs. Raymond's marriage, between this daughter and mother evidently arose from jealousy of the latter beginning as early as 1906. The mother accused her 15-year old daughter of improper relations with Joseph LaLiberte whom testatrix married about 10 years later, and divorced him in 1930. He was about 22 years younger than Mrs. LaLiberte. She was high tempered and always more or less jealous of Mr. LaLiberte. She charged him with improper relations with numerous women; and from time to time made charges of this character involving contestant. The latter and LaLiberte both denied the truth of such accusations. Long periods of estrangement between the mother and daughter resulted, with intermittent periods of friendly relations of rather short duration. This attitude of the two towards each other continued until the time of the execution of the will. In this case the daughter testified:

"I visited my mother infrequently between 1928 and 1932 because of her accusations. I did not know she was suffering from cancer until July, 1932."

The daughter was advised of her mother's affliction the latter part of July, 1932, by a letter received from Mrs. Johnson, one of the beneficiaries under the will. From contestant's testimony it appears that she saw her mother in August, 1932, that she visited her twice in September, three or four times in October, and perhaps half a dozen times in November. In December she was at the mother's home a number of times, including the 26th, 28th, 29th and 30th. She was also there January 2, 1933, and on subsequent dates prior to the mother's death. As above noted the will was executed December 31, 1932, and the mother died February 14, 1933.

Death of testatrix resulted from cancer with which she had been afflicted for approximately five years. At first its development must have been rather slow because Mrs. LaLiberte visited the downtown stores of Detroit as late as September, 1932. She was able to be about her home until December 8th, at which time she became confined to her bed. Subsequent to the making of the will and as late as the second week in February, 1933, contestant talked in private with her mother concerning disposition of her estate. In this particular, contestant testified:

"I asked her—I told her she knew she was near death, and if she had anything to say or give the children that I would be grateful; I said, 'If you don't do anything for me, mother, I hope you do something for the children, Yoland, my daughter, has been so kind to me, and I think they deserve to be remembered.' She said that we were well taken care of."

Careful reading and consideration of all the testimony contained in this record discloses no facts or circumstances which, taken singly or collectively, would justify a verdict setting aside this will on the ground that the testatrix was either unduly influenced or mentally incompetent. In arriving at this conclusion we do not overlook the fact that testatrix' cancerous affliction caused her intense suffering and intermittently she experienced pains which seemed quite unbearable; that to some extent sedatives were used, that she was confined to her bedroom and practically helpless, and further that because of inability to use her right arm or hand without experiencing extreme pain, she had to be manually assisted in placing her cross upon the will.

Proof of pain and suffering and use of sedatives at times is not alone sufficient to establish mental in-

competency to make a will, especially when the undisputed testimony is that the testator with full understanding determined each of the various provisions contained in his will. *In re Cochrane's Estate,* 211 Mich. 370. Under such circumstances proof of old age and physical weakness is not sufficient to establish mental incompetency. *Hoban* v. *Piquette,* 52 Mich. 346, 361; *Soules* v. *Soules,* 202 Mich. 561. Even total disinheritance of an only child is not in and of itself evidence of mental incompetency of a parent to make a valid will. *In re Bliss' Estate,* 247 Mich 389. And this court has said many times that proof of mere opportunity to unduly influence a testator is not sufficient to invalidate his will. *In re Murray's Estate,* 219 Mich. 70; *In re Ver Vaecke's Estate,* 223 Mich. 419; *In re Nosek's Estate,* 229 Mich. 559; *In re Alvord's Estate,* 258 Mich. 497.

There is no testimony in this record indicating that at the time of making the will the testatrix was lacking in mental capacity, that she was not mindful of the natural objects of her bounty or that she did not fully comprehend the property she possessed and the disposition she desired to make of it. She dictated the respective provisions of her will. It was prepared by a disinterested lawyer of experience, and in so doing he was assisted by a banker who had been a confidential business adviser of the testatrix, and who acted as an interpreter for her in conveying to the attorney the provisions which she desired to have embodied in her will. Under this record neither the question of undue influence nor mental incompetency of the testatrix should have been submitted to the jury.

The remaining question is whether there was testimony sufficient to raise an issue of fact for the jury as to whether in the making of this will the tes-

tatrix was influenced by an insane delusion. As bearing upon this phase of the case, the facts hereinbefore stated should be amplified by the following. We have already noted that each and every instance of improper conduct charged by the testatrix against her daughter and Mr. LaLiberte was denied by them. On the other hand there is nothing in the testimony to corroborate in any material way these charges made by the testatrix. One of such instances had to do with the claim of Mrs. LaLiberte that on one occasion at the dinner table her daughter kissed Mr. LaLiberte. This was not only denied by the testimony of the two but it was also denied by the testimony of the daughter's husband who was present at the dinner table with the others. It seems too plain for argument that the testimony of these witnesses clearly presented an issue for the jury as to whether there was any foundation in fact at all for the charges made by Mrs. LaLiberte against her daughter, or whether on the other hand such charges resulted from an insane delusion.

But there is the further question as to whether there is testimony tending to show that the testatrix was influenced in the making of her will by such insane delusion. *In re Walker's Estate,* 270 Mich. 33. Unless it can be said that there is no testimony in this record which would justify a jury in finding that the testatrix was so influenced, a jury issue was presented. This record discloses that the testatrix claimed improper conduct of the character noted was going on between her daughter and divorced husband almost to the very time of making the will. She told other attendants that her daughter, when visiting her and staying over night during Mrs. LaLiberte's last illness, had gone to the bedroom occupied by Mr. LaLiberte during the nighttime; and at

least on one occasion that the two had gone into a bathroom, closed the door, and remained there for some time. There is testimony that as a result of such conduct, real or imagined, the testatrix directed that her daughter should not be allowed to remain at the home of the mother over night. With this showing that the alleged insane delusion was operative at the very time of making the will by which the mother, except to the extent of $500, disinherited her only child it cannot be said that there is no testimony from which a jury might not properly draw the inference that the alleged insane delusion controlled the testatrix's disposition of her property. It is true that the testatrix in her will remembered her daughter, her daughter's children, and even Mr. La-Liberte, whom testatrix charged was a party to the misconduct of which she complained. But this, we think, does not result in removing or solving the issue of fact which was for a jury; but instead, these provisions of the will have merely an evidentiary bearing upon this factual aspect of the case. Under this record the question of insane delusion should have been submitted to the jury. The questions of undue influence and mental incompetency should not have been submitted. It is not possible to determine from this record upon what ground the jury found against the will. For the reasons indicated the judgment entered must be vacated and the case remanded for a new trial. Costs of this court to appellant.

POTTER, C. J., and NELSON SHARPE, FEAD, BUTZEL, BUSHNELL, and EDWARD M. SHARPE, JJ., concurred. WIEST, J., concurred in the result.