*In re* BRINER'S ESTATE.

1. WILLS—UNDUE INFLUENCE.

Circuit court *held,* justified in sustaining will as a matter of law as against claim of undue influence in absence of evidence sustaining such contention.

2. SAME—MENTAL COMPETENCY—EVIDENCE.

Evidence of testatrix's mental incompetency to make will *held,* insufficient to justify setting it aside on that ground, where testimony related numerous trifling matters occurring on a long cross-country automobile trip over a year before the execution of the will.

3. SAME—DISINHERITANCE OF AN ONLY CHILD—INCOMPETENT PERSONS.

Will failing to mention only child of testatrix but leaving all of her property to her sister *held,* not invalid because of such disinheritance, where the child was an incompetent person confined in an institution and testatrix gave reasons for such disposition to attesting witnesses at time will was executed (3 Comp. Laws 1929, § 15550). .

4. SAME—DISPOSITION OF PROPERTY.

Disposition of real and personal property by will *held,* of insufficient importance to justify setting will aside because of mental incompetency where testatrix did have some personal property and period of redemption had not expired under foreclosed mortgages against all realty she and her husband had owned.

5. SAME—MENTAL COMPETENCY—NORMALCY—EVIDENCE.

Testimony of contestant's witnesses as to mental incompetency of testatrix to execute will over a year after any of them had had an opportunity to be in contact with her and which, at most, indicated she was not a normal person *held,* insufficient to justify setting her will aside.

6. SAME—OLD AGE—PHYSICAL WEAKNESS.

Mere proof of old age and physical weakness is not sufficient to establish mental incompetency to make a will.

7. SAME—DISINHERITANCE OF CHILDREN.

Total disinheritance of an only child is not in and of itself evidence of mental incompetency of a testatrix (3 Comp. Laws 1929, § 15550).

8. SAME — MENTAL INCOMPETENCY — DISAGREEMENT OF JURY — DIRECTED VERDICT.

  Circuit court's direction of verdict sustaining will of testatrix after jury's disagreement *held*, proper where record is barren of testimony that she did not know the property of which she was then seized, disposition she desired to make and who were the natural objects of her bounty (3 Comp. Laws 1929, § 14535).

Appeal from Ingham; Carr (Leland W.), J. Submitted March 16, 1936. (Docket No. 134, Calendar No. 38,844.) Decided April 6, 1936.

Anna Pollock presented for probate the will of Alma Briner, deceased. Elizabeth Brummett, guardian of Bessie Nesbitt, objected thereto. From order allowing probate of will, contestant appealed to circuit court. Jury disagreed. Directed verdict and judgment for proponent. Contestant appeals. Affirmed.

*Shields, Silsbee, Ballard & Jennings,* for proponent.

*Clifford A. Mitts, Jr.,* for contestant.

NORTH, C. J. In this suit the will of Alma Briner, deceased, is contested by Elizabeth Brummett, the guardian of Bessie Nesbitt, an incompetent and only surviving child of deceased. Primarily invalidity is asserted in consequence of alleged mental incompetency and undue influence. Trial by jury resulted in disagreement; but thereafter, and in accordance with the statutory provision (3 Comp. Laws 1929, § 14535), the proponent in effect renewed her motion, made at the close of contestant's proofs, for a directed verdict and judgment sustaining the will. This motion was heard and granted by the circuit judge. From the judgment entered sustaining the will, contestant has appealed.

The main contention of appellant is embodied in the first reason assigned in support of her appeal:

"That the trial court erred as a matter of law in granting proponent's motion for a directed verdict after the jury had disagreed."

At the time of making her will, November 3, 1932, Mrs. Briner was past 70 years of age. In September, 1931, she had made an automobile trip from Michigan to California in company with her husband, her incompetent daughter Bessie Nesbitt, and George Chrysler, her brother. Mr. and Mrs. Brummett, the latter being the contestant, and a Mr. Chamberlain made the journey at the same time. They arrived at the California home of testatrix's sister, the proponent, at 11:30 on the night of September 17, 1931. Mr. and Mrs. Briner, their daughter and Mr. Chrysler appear to have remained in California with the proponent, excepting that Bessie Nesbitt was committed to a public institution. Later she was returned to Michigan and is now an inmate of the Kalamazoo State Hospital. The husband of the testatrix died in April, 1932, and her brother George Chrysler died on November 4, 1932, as the result of an accident. As noted above the will in suit was made November 3, 1932; and the testatrix died November 30, 1932. By the terms of her will Mrs. Briner left all of her property to Anna Pollock, the sister to whose home she had gone in California. This instrument was prepared and witnessed by Hazel Blohm, a woman 43 years of age, who had known testatrix for 20 years. It was also witnessed by Celia Pollock, daughter-in-law of the beneficiary. Practically the only property right of which Mrs. Briner died seized was that under an insurance policy in the amount of $1,000 on the life of her brother George Chrysler in the Ancient Order of Gleaners. As before indicated the brother predeceased testatrix.

A careful review of this record discloses no testimony tending to sustain contestant's allegation of undue influence.  As against this objection the circuit judge was correct in sustaining the will as a matter of law.

A more difficult question is presented touching the alleged mental incapacity of Mrs. Briner to make the will in question.  There is testimony in the record of the following facts touching the alleged incompetency of the testatrix, but all of this testimony has to do with facts and circumstances antedating the making of the will a year or more: The testatrix would talk at random and at least at times could not or did not carry on a connected conversation.  Her mentality was somewhat weakened.  She was suffering from heart affliction and Bright's disease which her physician, Dr. McIntyre, testified was a progressive affliction and had already progressed to the point where it affected her mentality before she started to California.  On the trip from Michigan to California in September, 1931, Mrs. Briner displayed ill-temper; insisted upon her luggage being opened to see that none was missing; she carried some effects which were of no value and were unnecessary; on two occasions she intentionally broke a thermos bottle because she was displeased with the water contained therein, saying it was not fit to drink; she was forgetful, credulous and her physician testified she had ''mild delusions of grandeur.''  He also testified that at the time testatrix left for California, ''I would expect that she would probably be just as credulous as a little 10 or 12-year old child.''  But on cross-examination Dr. McIntyre testified:

''I am not able to express any opinion as to her mental competency to execute the will on November 3, 1932.  I do not believe any doctor would be

able to answer that question in the affirmative unless he was in contact. I am unable because I had been out of contact with her for some 14 or 15 months. I do not propose to give any opinion as to the mental competency of this woman in the execution of her last will and testament in California.''

There is testimony that upon arriving at her sister's home in California Mrs. Briner did not recognize her brother-in-law, but it appears that prior to this visit she had not seen him for 10 years.

While we attach no significance to it, we note that there is also testimony that whenever testatrix used the electric flatiron she insisted upon the electric bulb in connection therewith being lighted, although this was unnecessary to the use of the electric iron and testatrix was so informed. Nor are we impressed with the testimony that when on the California trip the parties were passing Lake Tahoe testatrix washed her hands in the waters of the lake. Trifling matters of this character are not indicative of lack of testamentary capacity and a jury should not be permitted to set aside a will on the assumption that they are.

In addition to the foregoing contestants stress the fact that Mrs. Briner did not mention her daughter in the will, citing and relying upon 3 Comp. Laws 1929, § 15550. However, the undisputed testimony of Hazel Blohm and Celia Pollock discloses that the testatrix had her daughter in mind at the time the will was executed, and that she gave her reasons for leaving the property to proponent rather than to testatrix's incompetent daughter. This left no question for a jury on this phase of the case. The statute reads:

''When any testator shall omit to provide in his will for any of his children, or for the issue of any deceased child, and it shall appear that such omis-

sion was not intentional, but was made by mistake or accident, such child, or the issue of such child, shall have the same share in the estate of the testator as if he had died intestate, to be assigned as provided in the preceding section.''

As bearing upon her knowledge of the property she possessed, it is further noted that by her will the testatrix attempted in separate paragraphs to dispose of personal property and of real property, when in fact she at that time possessed no real property. But it appears that not long prior to the California trip testatrix and her husband owned four separate parcels of real estate in the city of Lansing, Michigan, and by reason of inability to meet mortgage indebtedness their interests in these properties were foreclosed. In view of this circumstance it is easy to conceive that testatrix might still have believed that in consequence of irregularities in foreclosures or unexpired redemption periods she still had some interest in real property. The record in this particular is indefinite and insufficient to sustain any fixed conclusion.

The rather extraordinary phase of contestant's case is this: That not one of her witnesses had an opportunity to be in contact with the testatrix for upwards of a year prior to the date of the will. Only one expert witness, Dr. McIntyre, testified in behalf of contestant; and as noted above, he was unwilling to testify to the incompetency of the testatrix to make this will. The lay witnesses produced by contestant testified to many facts and circumstances which were indicative of Mrs. Briner's competency rather than her incompetency. The testimony of the witness Tillie Matteson is as strongly indicative of incompetency as that of any other witness produced by contestant but on direct examination even this witness gave the following testimony:

"*Q.* Whether or not, during the time you knew her, Mrs. Briner, you formed an opinion as to whether her mind was normal?

"*A.* No, I do not think it was. It might have been at times, but at other times it was not. I would not consider she was a normal person."

It may be admitted that Mrs. Briner was not a normal person, but it does not follow that she was incompetent to make the will in question. We do not find in this record that a single witness testified that in his or her opinion the testatrix was incompetent to make this will. This court has held that mere proof of old age and physical weakness is not sufficient to establish mental incompetency, *Hoban* v. *Piquette,* 52 Mich. 346, 361; *Soules* v. *Soules,* 202 Mich. 561; and also that total disinheritance of an only child is not in and of itself evidence of mental incompetency of a testatrix, *In re Bliss' Estate,* 247 Mich. 389; *In re LaLiberte's Estate,* 272 Mich. 424. It comes to this, that the record is barren of testimony which would sustain a finding of a jury that at the time of making this will Alma Briner did not have sufficient mental capacity to know the property of which she was then seized, the disposition she wished to make of such property, and who were the natural objects of her bounty. Under such a record the trial judge was correct in sustaining the validity of the will as a matter of law, notwithstanding the alleged mental incompetency of the testatrix.

It is not necessary to discuss other questions raised in appellant's brief. They are either lacking in merit or have no decisive bearing upon the question here decided.

The judgment entered in the circuit court is affirmed, with costs to appellee.

Fead, Wiest, Butzel, Bushnell, Edward M. Sharpe, Potter, and Toy, JJ., concurred.