*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* ESTATE OF HUBERT JENKINS.

RICHARD NADEAU, Personal Representative of
the ESTATE OF JENKINS,

        Appellee,

v

TIMOTHY JENKINS,

        Appellant.

UNPUBLISHED
February 12, 2019

No. 341005
Wayne Probate Court
LC No. 16-814205-DE

Before: MURRAY, C.J., and STEPHENS and RIORDAN, JJ.

PER CURIAM.

Appellant appeals as of right the probate court's order granting appellee's motion for summary disposition pursuant to MCR 2.116(C)(10). We affirm.

## I. BACKGROUND

Hubert Jenkins (decedent) died a widower on January 4, 2016, leaving behind no children. Appellee, as personal representative of decedent's estate, filed a will that decedent had executed in July 2014 (7/14 will) with the Wayne Probate Court. The 7/14 will gave decedent's boat and 10% of decedent's residual estate to appellee. The remaining 90% of decedent's estate was given to decedent's nephew Jimmy Ray Jenkins (Jimmy Ray) and appellant's brother. Appellant filed a petition requesting supervision of the administration of the estate and to set aside decedent's 7/14 will, contending that decedent lacked the requisite testamentary mental capacity at the time that the 7/14 will was executed. Appellant asked the court to accept decedent's will that was signed in April 2013 that left 40% of decedent's estate to appellant and nothing to Jimmy Ray.

After discovery, appellee moved for summary disposition under MCR 2.116(C)(10), contending that no genuine issue of material fact existed regarding decedent's mental state in

July 2014 because appellant had not produced any evidence which raised a question of whether decedent was competent to properly execute his will. In support of that contention, appellee offered, among other evidence, the affidavit of decedent's attorney, David Grunow. Grunow stated that he drafted decedent's 7/14 will at decedent's express direction, and Grunow did not have any contact with any of decedent's family members regarding decedent's estate. At the time that the 7/14 will was executed, Grunow believed that decedent was mentally alert and had full capacity to execute any legal documents. Appellee also offered medical records of decedent from physicians who observed decedent in 2015 and documented that decedent was "alert and oriented" during the visits and that decedent's "judgment and thought content" were normal.

In response, appellant contended that the evidence showed a genuine issue of material fact regarding decedent's mental state. In support of that contention, appellant offered his own deposition testimony and the affidavits of George Marx, decedent's neighbor, and Elsie Jenkins (Elsie), decedent's sister-in-law and the mother of appellant and Jimmy Ray. Appellant asserted his belief that decedent had been increasingly paranoid in the last couple years of his life. Marx stated that decedent had begun to do a "lot of weird and unusual things" during the last two years of decedent's life. Elsie claimed that decedent's "confusion and paranoia" had led decedent to mistakenly change decedent's will to eliminate appellant as a beneficiary.

The trial court granted appellee's motion for summary disposition. The trial court concluded that appellant did not produce sufficient evidence to establish a genuine issue of material fact regarding decedent's mental capacity to properly execute his 7/14 will.

## II. SUMMARY DISPOSITION

Appellant contends that his testimony and the affidavits of Marx and Elsie established a genuine issue of material fact regarding whether decedent had sufficient mental capacity to execute his 7/14 will. We disagree.

This Court reviews de novo a probate court's decision granting summary disposition. *In re Casey Estate*, 306 Mich App 252, 256; 856 NW2d 556 (2014). When reviewing a trial court's decision on a motion for summary disposition, this Court must "consider the documentary evidence presented to the trial court 'in the light most favorable to the nonmoving party.' " *DeBrow v Century 21 Great Lakes, Inc (After Remand)*, 463 Mich 534, 539; 620 NW2d 836 (2001). A motion for summary disposition under MCR 2.116(C)(10) is properly granted when "there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law." *Greene v AP Prod, Ltd*, 475 Mich 502, 507; 717 NW2d 855 (2006). "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *In re Lett Estate*, 314 Mich App 587, 595; 887 NW2d 807 (2016), quoting *West v General Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003).

MCL 700.2501(2) provides that a testator has sufficient mental capacity to properly execute a will if four requirements are met:

(a) The individual has the ability to understand that he or she is providing for the disposition of his or her property after death.

(b) The individual has the ability to know the nature and extent of his or her property.

(c) The individual knows the natural objects of his or her bounty.

(d) The individual has the ability to understand in a reasonable manner the general nature and effect of his or her act in signing the will.

An individual's mental capacity to properly execute a will is presumed. *In re Mardigian Estate*, 312 Mich App 553, 565; 879 NW2d 313 (2015). A person contesting a will "has the burden of establishing lack of testamentary intent or capacity . . . ." MCL 700.3407(1)(c). The issue of whether a testator has the requisite testamentary capacity "is judged as of the time of the execution of the instrument, and not before or after[.]" *Mardigian*, 312 Mich App at 565, quoting *In re Powers' Estate*, 375 Mich 150, 152; 134 NW2d 148 (1965).

A testator has sufficient mental capacity to execute a will when he or she "goes to an attorney and directs the drafting of a will disposing of his property in a fashion that indicates that he knows the property of which he is possessed and the objects of his bounty, and has sufficient reason for disposing of the property in the fashion he does under the will[.]" *In re Anderson's Estate*, 353 Mich 169, 175; 91 NW2d 356 (1958). See also *In re Ver Vaecke's Estate*, 223 Mich 419, 425; 194 NW 135 (1923) (describing that, in those circumstances, it is "a waste of time" to question the testator's mental capacity). Testimony of others regarding the testator's mental state, even if based on personal observations, is opinion evidence and is not entitled to any weight when that opinion testimony is confronted with uncontroverted testimony that the testator alone directed his will and formed its provisions. *In re Hallitt's Estate*, 324 Mich 654, 663-664; 37 NW2d 662 (1949), quoting *In re Aylward's Estate*, 243 Mich 9, 16; 219 NW 697 (1928).

Furthermore, proof of old age, physical weakness, or forgetfulness is insufficient to establish a lack of mental capacity. *In re Sprenger's Estate*, 337 Mich 514, 521; 60 NW2d 436 (1953); *In re Briner's Estate*, 275 Mich 396, 402; 266 NW 394 (1936). "A testator may be suffering physical ills and some degree of mental disease and still execute a valid will, unless the provisions thereof are affected thereby." *In re Ferguson's Estate*, 239 Mich 616, 627; 215 NW 51 (1927). Additionally, neither a "lack of wisdom in the disposition of the property nor the fairness of the provisions of the will [should] influence the court in a determination of mental competency." *Sprenger's Estate*, 337 Mich at 521.

The opinion evidence offered by appellant did not create a material question of fact in this case. It is of great significance that there was evidence from medical records produced by licensed health care professionals that was contemporaneous to the execution of the 7/14 will indicating the testator was oriented and appropriate. Despite early allegations, no evidence was offered that Jimmy Ray exerted undue influence on his long estranged uncle. The court received evidence that decedent went to Grunow and personally directed the disposition of his property under his 7/14 will and that no other family persons were present or involved in that process. The evidence offered by appellant, taken by itself, merely shows that decedent was sometimes confused or paranoid that people would steal his property or trespass on his land or that decedent may have mistakenly changed his will. Marx stated that decedent had done a "lot of weird and unusual things" and that decedent had incorrectly threatened Marx and complained that Marx

was trespassing on decedent's property. Elsie asserted that decedent had suffered periods of confusion and paranoia for several years prior to his death that led decedent to mistakenly change his will. Appellant stated that decedent became paranoid in 2013 about people stealing decedent's property. However, Grunow claimed that decedent alone expressly dictated the contents of his 7/14 will. At that time, decedent was mentally alert and knew both the nature of his estate and the members of his family. Grunow also stated that he did not have any contact with decedent's family regarding decedent's estate. Grunow's "uncontroverted testimony" that decedent alone directed the provisions of his will directly contradicts the opinion evidence offered by appellant; thus, as a matter of law, that opinion evidence "is entitled to be given no weight whatever." *Hallitt's Estate*, 324 Mich at 664.

Even when viewing the evidence offered by appellant in the light most favorable to appellant, that evidence does not overcome the presumption that decedent had the mental capacity to properly execute his 7/14 will. The evidence does not materially affect one of the four requirements of MCL 750.2501(2). Elsie's opinion that decedent mistakenly changed his will and appellant's opinion that decedent was confused and paranoid carry "no weight" legally in light of Grunow's affidavit. Because that opinion evidence carries no weight, a reasonable person cannot infer from the evidence that decedent was incapable of knowing the members of his family, the extent of his property, or the effect of executing a will. Rather, the evidence is merely proof of old age or forgetfulness, and it does not, by law, establish a lack of mental capacity. *Sprenger's Estate*, 337 Mich at 521. Furthermore, the medical evidence offered by appellee establishes that decedent was "alert and oriented" and that his "judgment and thought content" were normal at the time he executed the 7/14 will. This evidence supports a finding that decedent had the requisite mental capacity. Therefore, even when viewing the evidence in the light most favorable to appellant, appellant has not shown a genuine issue of material fact because the evidence demonstrates that decedent still possessed the necessary mental capacity to execute his 7/14 will even though he suffered from old age or forgetfulness.

Affirmed.

/s/ Christopher M. Murray
/s/ Cynthia Diane Stephens
/s/ Michael J. Riordan