*In re* COCHRANE'S ESTATE.

COCHRANE *v.* KING.

1. TRIAL—WEIGHT OF EVIDENCE—DIRECTED VERDICT.
   A trial judge may not direct a verdict on the ground that the weight of the evidence greatly or clearly preponderates in favor of one side or the other.

2. WILLS—MENTAL INCOMPETENCY — TEMPORARY CONDITION — EVIDENCE—SUFFICIENCY—DIRECTED VERDICT.
   Where contestant's claim that testator was mentally incompetent to make a will was based upon the facts that he suffered from paroxysms of pain and the administration to him of opiates, a temporary condition, but not only was there no testimony that such condition prevailed at

---

On sufficiency of evidence to repel presumption of undue influence for circumstances that one benefited by will was draftsman thereof or benefited by procuring its execution, see note in 28 L. R. A. (N. S.) 288.

On the general rule for determining capacity to make a will, see notes in 27 L. R. A. (N. S.) 2; L. R. A. 1915A, 444.

the time the will was made, but the testimony was all to the contrary, the trial judge was correct in holding that there was no testimony of mental incapacity to go to the jury.

3. SAME—UNDUE INFLUENCE.
Undue influence cannot be predicated upon opportunity alone.

4. SAME—PRESUMPTION—REBUTTAL—EVIDENCE—DIRECTED VERDICT.
If a presumption of undue influence arose from the fact that a beneficiary, at testator's request, made a memorandum of the will and took it to the attorney to have it drawn, such presumption was rebuttable, and was overcome by the denial of undue influence by direct, positive and credible testimony, which was undisputed by any evidence, direct or circumstantial, and the trial judge correctly held that there was no question for the jury.

Error to Lapeer; Williams (William B.), J. Submitted June 15, 1920. (Docket No. 46.) Decided July 20, 1920.

David Cochrane and others presented for probate the last will of William Cochrane, deceased. The will was disallowed in the probate court, and proponents appealed to the circuit court. Judgment for proponents on a directed verdict. William King, contestant, brings error. Affirmed.

*William T. Hosner* and *Theo. D. Halpin,* for appellant.

*John H. Patterson, Joseph Walsh* and *B. F. Reed,* for appellees.

FELLOWS, J. William Cochrane was a resident of Lapeer county all his life. He had been married but his wife died some two or three years after their marriage, leaving no children. He lived on, and worked his father's farm where he was born, about two and one-half miles from Almont, until his father's death when he bought out the other heirs and continued on the place. He was a successful farmer, a director in

the bank at Almont, had accumulated considerable personal property in addition to his real estate, and left an estate of upwards of $52,000. He was 68 years old when he died. He had been ailing for some months and on May 28, 1918, he entered the hospital of Dr. Burley at Almont. Dr. Burley became satisfied after he had been there a short time that Mr. Cochrane was afflicted with cancer of the bowels and could not be expected to live long. About June 12th, he so informed Mr. Cochrane in reply to his inquiry and told him if he had any business affairs he had better straighten them up. In the forenoon of June 14th Mr. Cochrane informed his brother David that he wanted to make his will and requested him to get Frank Andrus, an attorney of many years' experience at Almont and a director in the same bank Mr. Cochrane was interested in, to draw it. David replied that he would go and get Mr. Andrus but Mr. Cochrane requested him to wait until he told him how he wanted it so the attorney could make it out. David got a piece of paper and wrote down his instructions. Under these instructions Mr. Cochrane's property was to be willed as follows: To Mrs. Jennie St. John, who was housekeeper for both his father and himself, $1,500; to William King (contestant), who was a son of his deceased sister, $1,500; to Edwin King, his brother-in-law, and the father of William, $1,000; to Halfred Braidwood, $500, and the balance to his four brothers and two sisters. David took the memorandum to Mr. Andrus' office and Mr. Andrus drew the will, leaving the name of the executor blank. After it was prepared he took it over to the hospital and read it over to Mr. Cochrane who pronounced it as he wanted it, and requested that David's name be inserted as executor; this was done and the will was duly executed in the presence of Mr. Andrus and Dr. Burley, who signed as witnesses. Mr. Cochrane died

June 19th, and the nephew, William King, contests the will on the usual grounds of mental incapacity and undue influence. From a judgment entered upon a directed verdict sustaining the will, he brings the case here.

Defendant's counsel are correct in their contention that a trial judge may not direct a verdict on the ground that the weight of the evidence greatly or clearly preponderates in favor of one side or the other. But we do not understand the trial judge to have directed the verdict in this case for such reason. While he did state to the jury that if the jury were to find that Mr. Cochrane was incompetent he would feel obliged to set such verdict aside on his own motion, he unequivocally held that there was no evidence justifying him in submitting the case to the jury and for that reason he directed a verdict sustaining the will. With this conclusion we are in entire accord.

Mental Incompetency. There is no claim in the case that deceased had by reason of old age or other infirmities broken down mentally. The undisputed testimony discloses him to have been a man of vigorous mentality and strong will power, a thrifty successful farmer and business man. What is claimed is that the cancerous growth caused him to suffer great pain, to relieve which opiates were administered and that he was not competent when suffering from such pain or when under the influence of the opiates or for some time thereafter. There was testimony that in the afternoon and evening of the day before the will was executed he suffered considerable pain, that he was irritated, used profanity, and complained of the treatment or want of it by the nurse and physician, and one witness who saw him at this time expressed the opinion that he was not competent to transact business. The trial judge in his charge thus expressed himself as to the effect of this testimony:

"The fact that he may have been incompetent on the afternoon of the 13th would throw no light on his condition on the morning of the 14th unless his condition on the morning of the 14th was the same or approximately as they were on the afternoon of the 13th. It appears that when he was in a paroxysm of pain that he may and probably was not competent to execute a will, but it was because of the effect that the paroxysms of pain would have on him at that time."

Deceased at times suffered considerably from pain. But these paroxysms of pain were temporary. In the case of *Pierce* v. *Pierce*, 38 Mich. 412, this court had under consideration the question of intoxication of the testator and it was there said:

"And we are further of opinion that inasmuch as it is a temporary condition, the testimony must be confined to the time involved in the transaction in controversy. If Pierce was not overcome by drunkenness when he made his will, it is not important what his condition was on other occasions."

See, also, the recent case of *In re Weber's Estate*, 201 Mich. 477.

H. M. C. tablets consist of 1/100 of a grain of hyoscin, 1/4 of a grain of morphin and 67/100 of a grain of cactin. They are administered hypodermically to relieve pain. One witness called by defendant, one of the nurses who assisted in caring for deceased, testified that it makes the patient "do funny things" and that it so affected deceased. At first this witness testified that she at one time administered H. M. C. to deceased in the morning and he did not fully recover from the effects until after supper; but she later, and after consulting the chart she kept, admitted that she was mistaken and that she never administered this treatment to him in the morning. The medical testimony which is undisputed is that the effect of H. M. C. wears off in three or four hours. The

night of the day that contestant's witness saw him
when he was suffering great pain there was admin-
istered to deceased at 8, 10 and 2 o'clock a half or
"children's dose," as expressed by the doctor, of H.
M. C. and he slept until 7 o'clock in the morning.
As he expressed it to his brother David; he had "a
fairly good night's rest." Every witness who saw
him this forenoon which was the day the will was
executed, and there were several of them, testifies that
he was perfectly competent to transact business and
there is no evidence that he then had paroxysms of
pain, was under the influence of the opiate or in any
other than a normal condition. When Mr. Andrus
came over after preparing the will Mr. Cochrane was
in a chair and while Mr. Andrus was there Mr. Coch-
rane got up and walked about the room. The testi-
mony was undisputed and unequivocal that he under-
stood everything he was doing, said the will was as
he wanted it, that he was mentally competent, and
that the will was his deliberate and intelligent act.
This will contest differs from the general run of will
contests in that it is usually claimed that there has
been a mental breakdown covering a considerable
period and where evidence of acts indicating mental
incapacity at times not too remote are receivable in
evidence and bear on the condition of mind at the time
the will is executed; but in the instant case the mental
incapacity is claimed to be due to temporary causes,
*i. e.,* paroxysms of pain and the administration of
opiates. The burden being on the contestant to show
mental incapacity (*In re Curtis' Estate,* 197 Mich.
473), it is incumbent upon him to show that the tem-
porary causes are operating at the time the will is
made. In the instant case not only is there an absence
of such proof but the testimony in the case and all
of it on the subject shows that such causes were not
operating and that testator was perfectly competent

when the will was executed. The trial judge was correct in holding that there was no testimony of mental incapacity to go to the-jury.

Undue Influence. Contestant called at the hospital while his uncle was there and on several occasions was permitted to see and visit with him. There were three occasions he says when he was not admitted to the sick room. But the doctor in charge explains the reason for not admitting him on these occasions. Friends were also admitted. Testator's brothers and sisters also called to see him, some more frequently than others. But undue influence cannot be predicated upon opportunity alone. The fact that one has the opportunity to exercise undue influence is not evidence that it is exercised. *Severance* v. *Severance,* 90 Mich. 417; *Blackman* v. *Andrews,* 150 Mich. 322; *Noble* v. *Hunter,* 195 Mich. 713. But contestant's counsel say that the brother David made the memorandum and took it to the attorney and had the will drawn, and they argue that this is the equivalent of drawing the will himself; they therefore say that a presumption arises that there was undue influence. We need not determine whether the facts of the instant case bring it within that line of cases where a beneficiary draws the will and where a presumption of undue influence arises because if such presumption exists it is a rebuttable one. *Bush* v. *Delano,* 113 Mich. 321; *In re Bailey's Estate,* 186 Mich. 677; and in the instant case the denial of undue influence is direct, positive and credible and is undisputed by any evidence, direct or circumstantial. In the recent case of *Gillett* v. *Traction Co.,* 205 Mich. 410, Mr. Justice KUHN, who wrote for the court, fully discussed the question of the effect to be given a presumption where it is rebutted by the proofs. It was there said:

"It is now quite generally held by the courts that a rebuttable or *prima facie* presumption has no weight

as evidence. It serves to establish a *prima facie* case, but if challenged by rebutting evidence, the presumption cannot be weighed against the evidence. Supporting evidence must be introduced, and it then becomes a question of weighing the actual evidence introduced, without giving any evidential force to the presumption itself."

Applying this rule to the instant case the presumption which we are asked to indulge in falls before the direct, positive and credible testimony given in the case. The presumption, if one exists, was all that contestant had to make even a *prima facie* case. There was no evidence, circumstantial or otherwise, which made a case of undue influence. When this *prima facie* case, this presumption, was met and challenged by the rebutting evidence, the presumption failed and could not be weighed against the evidence. The contestant's case being then stripped of the presumption, there was nothing left of it for the jury to consider. The trial judge correctly held that contestant was not entitled to take the verdict of the jury on the question of undue influence.

A proper disposition of the case was had in the trial court. See *Severance* v. *Severance, supra; Blackman* v. *Andrews, supra; In re Ganun's Estate,* 174 Mich. 286; *In re Williams' Estate,* 185 Mich. 97; *In re Ferris' Estate,* 191 Mich. 140; *In re Wynn's Estate,* 193 Mich. 223; *In re Weber's Estate, supra.*

The judgment is affirmed.

Brooke, Stone, Clark, and Sharpe, JJ., concurred. Steere and Bird, JJ., concurred in the result. Moore, C. J., did not sit.