*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

---

*In re* ESTATE OF SCOTT; IN RE MATTHEW G. SCOTT TRUST.

---

CHRISTOPHER G. SCOTT,

      Appellee,

v

PHILLIP SPRAGUE,

      Appellant.

UNPUBLISHED
December 21, 2023

Nos. 360651; 360652; 360653; 360654
Clare Probate Court
LC No. 20-018127-DE;
20-018142-TV

---

Before: REDFORD, P.J., and SHAPIRO and YATES, JJ.

PER CURIAM.

In these consolidated cases,[1] Phillip Sprague appeals the final judgment entered following a jury trial and the trial court's orders denying his postjudgment motions in two cases consolidated by the lower court: *In Re Matthew G. Scott*, Case No. 20-018127-DE, which contested matters pertaining to decedent Matthew G. Scott's estate planning documents including the validity of his will and the disposition of his estate; and *In Re Matthew G. Scott Trust*, Lower Court No. 20-018142-TV, which contested matters pertaining to the validity of decedent Matthew G. Scott's estate planning documents including the decedent's trust as amended before his death. In Docket No. 360651, Sprague appeals from the judgment entered in the case seeking to set aside Matthew G. Scott's will and denial of his motion for judgment notwithstanding the verdict or for new trial. In Docket No. 360653, Sprague appeals from the judgment entered in the case to set aside Matthew's trust and denial of his motion for judgment notwithstanding the verdict or for new trial. In Docket Nos. 360652 and 360654, Sprague appeals from the trial court's denial of his motion

---

[1] See *In re Scott Estate*; *In re Matthew G Scott Trust*, unpublished order of the Court of Appeals, entered April 1, 2022 (Docket Nos. 360651; 360652; 360653; 360654) (ordering consolidation of cases to advance the efficient administration of the appellate process).

requesting the court's determination that it lacked jurisdiction over real property at issue in the two cases. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Matthew G. Scott (Matthew) died on July 30, 2020, at the age of 82. His two sons, Christopher G. Scott (Christopher) and Matthew T. Scott (Tad), and their families survived him. After his father's death, Christopher commenced two cases in the probate court by petitioning to set aside Matthew's will and contest the validity of his estate planning documents and the disposition of his estate, and by petitioning to set aside Matthew's trust and contest the validity of his estate planning documents after Christopher learned that Matthew appointed Sprague as the personal representative of the estate and as the successor trustee of Matthew's trust.

Matthew had significant health problems and periodically received medical care at the Mayo Clinic in Rochester, Minnesota during which he stayed with Christopher and his family. During July 2019, during such stay, Matthew fell down steps and suffered a traumatic brain injury which caused him significant physical and mental impairments. After months of hospital inpatient and outpatient care and rehabilitation, Matthew returned to Michigan and moved into an assisted living facility in Gladwin, Michigan, not far from his home, which he approved and selected with assistance from his family members. While living at the assisted living facility, Sprague, a neighbor who had worked for Matthew a decade earlier until they had a falling-out, renewed his acquaintance and frequently visited Matthew. Although Matthew initially appeared to enjoy his assisted living arrangement, over time his attitude and demeanor changed to the point that he displayed aggression and anger, and increasing paranoia about his living situation and closest family members. Staff at the facility noted that Matthew's demeanor changes correlated with Sprague's open hostility toward the facility and Matthew's sons which he communicated to Matthew. Sprague moved Matthew out of the assisted living facility to live with Sprague, and over his remaining months of life Matthew became isolated from his family.

During December 2019, Sprague arranged for Matthew to meet with lawyer, Joseph Barberi, to change his estate planning documents. In late February 2020, Matthew executed estate planning documents including an amended trust which designated Sprague as the successor trustee and a deed transferring his real property to himself from his trust with a provision that the property would be conveyed to Sprague upon Matthew's death. Matthew executed estate planning documents on July 9, 2020, while hospitalized just weeks before his death, including a new will and an amended and restated trust. The will appointed Sprague the personal representative of Matthew's estate and integrated the estate into the trust. The trust named Sprague as Matthew's successor trustee and provided for the distribution of money and a percentage of the value of the trust assets to Matthew's grandchildren, his church and Sprague, a combine and two tractors to Christopher, and a newly purchased skid loader to Sprague.

The petitions filed by Christopher alleged that Sprague influenced Matthew to distrust his sons and change his estate plan to benefit Sprague. After Matthew's death, Sprague took possession of Matthew's property, books and records, and his remains, and claimed the power to do so. The petitions asserted that the estate planning documents were invalid because Matthew lacked the capacity to create them and that all of the estate planning documents were the result of the undue influence Sprague imposed on Matthew to benefit himself. The petitions requested

among other relief that the court set aside estate planning documents created after December 24, 2011, order Sprague to turn over all of Matthew's property including documents and records and copies of estate planning documents in his possession, restrain Sprague from using estate or trust property for fiduciary fees, legal fees, or costs until the matters were decided or settled.[2]

After the parties conducted extensive discovery and the trial court ruled on various motions, the cases were tried to a jury in a five-day trial during which 15 witnesses testified. After the parties' counsel's closing arguments, the trial court inquired and they affirmed their satisfaction with the jury instructions and approval of the verdict form. The trial court instructed the jury. At the conclusion of instructing the jury, the trial court asked the parties' counsel if they were satisfied with the instructions as given. The parties' respective counsel affirmed their approval. The jury deliberated until instructed to go home and return the next morning to reconvene and continue deliberating. The trial reconvened the next morning, and after several hours of further deliberation the jury reached its verdict. The jury's verdict answered specific questions as follows:

1. Did Matthew G. Scott have the mental capacity to amend his Trust and make a deed on February 20, 2020?

___ Yes      _X_ No

2. Was the Trust amendment and deed executed by Matthew G. Scott on February 20, 2020, the result of undue influence by Phillip Sprague?

_X_ Yes      ___ No

3. Did Matthew G. Scott have the mental capacity to make a Will and Trust on February 25, 2020?

___ Yes      _X_ No

4. Were the Will and Trust executed by Matthew G. Scott on February 25, 2020, the result of undue influence by Phillip Sprague?

_X_ Yes      ___ No

5. Did Matthew G. Scott have the mental capacity to make a Will and Trust on July 9, 2020?

___ Yes      _X_ No

---

[2] Christopher also filed petitions to determine title to cash, annuities, real property, and personal property valued at approximately $822,650. The petitions alleged that Sprague obtained such property by exerting undue influence over Matthew and requested restoring Matthew's estate plan to its original form before Matthew's traumatic brain injury on July 8, 2019. After the trial, the court dismissed these petitions without prejudice.

6. Were the Will and Trust executed by Matthew G. Scott on July 9, 2020, the result of undue influence by Phillip Sprague?

  _X_ Yes      ___ No

Later that day, the trial court entered judgment against Sprague and for Christopher based upon the jury's verdict.

Sprague moved for a determination that all acts and proceedings in the probate court were null and void for lack of jurisdiction over the real property which Matthew deeded to Sprague by a Lady Bird deed recorded February 25, 2020, because the title to the property passed to Sprague upon Matthew's death and was not a part of the probate estate, so that any action taken by the probate court lacked validity and the court could not strip Sprague of title to his property. Sprague also asserted that the court lacked personal jurisdiction over him because he was not a party to the two cases and had not voluntarily submitted to the court's jurisdiction. Christopher opposed the motion.

Sprague also moved for judgment notwithstanding the verdict or alternatively for a new trial. Sprague argued that Christopher failed to produce evidence of Matthew's mental state on the three days that he executed estate planning documents. He asserted that, given how little mental capacity a person must possess to make a will, Barberi and Mayes' testimonies sufficed to prove that Matthew had enough capacity to execute the documents. Sprague argued further that no evidence established that he exerted undue influence on Matthew or took advantage of him. Christopher also opposed that motion.

Christopher petitioned for the removal of Sprague as personal representative on the grounds that doing so served the best interests of the estate and Sprague intentionally misrepresented facts and mismanaged the estate. Christopher requested that the court appoint him the personal representative. Sprague opposed the motion.

After holding a hearing on the postjudgment motions, the trial court denied Sprague's motion for judgment notwithstanding the verdict or for a new trial, and denied Sprague's motion regarding jurisdiction. Sprague now appeals.

## II. STANDARDS OF REVIEW

We review de novo a trial court's decision regarding a motion for judgment notwithstanding the verdict. *Taylor v Kent Radiology*, 286 Mich App 490, 499; 780 NW2d 900 (2009). Motions for judgment notwithstanding the verdict challenge the sufficiency of the evidence supporting a jury verdict in a civil case. *Id*. We review such evidence sufficiency challenges by reviewing the evidence and all legitimate inferences in the light most favorable to the nonmoving party. *Id*. "Only if the evidence so viewed fails to establish a claim as a matter of law, should the motion be granted." *Id*. (quotation marks and citation omitted). "If reasonable persons, after reviewing the evidence in the light most favorable to the nonmoving party, could honestly reach different conclusions about whether the nonmoving party established his or her claim, then the question is for the jury." *Id*. at 500. "Only when the evidence viewed in this light fails to establish a claim as a matter of law is the moving party entitled to judgment notwithstanding

-4-

the verdict (JNOV)." *Craig v Oakwood Hosp*, 471 Mich 67, 77; 684 NW2d 296 (2004) (quotation marks and citation omitted).

We review for an abuse of discretion a trial court's decision whether to grant or deny a motion for new trial. *Gilbert v DaimlerChrysler Corp*, 470 Mich 749, 761; 685 NW2d 391 (2004). We review de novo whether subject-matter jurisdiction exists. *In re Estate of Huntington*, 339 Mich App 8, 16; 981 NW2d 72 (2021). Whether a court had personal jurisdiction over a person is a question of law that we review de novo. *Oberlies v Searchmont Resort, Inc*, 246 Mich App 424, 426; 633 NW2d 408 (2001). We review de novo the proper interpretation and application of the statutes governing the probate court's jurisdiction. See *In re Geror*, 286 Mich App 132, 133; 779 NW2d 316 (2009). Further,

> This Court reviews "the probate court's findings of fact for clear error. A factual finding is clearly erroneous when this Court is left with a definite and firm conviction that a mistake has been made." *In re Redd Guardianship*, 321 Mich App 398, 403; 909 NW2d 289 (2017) (quotation marks and citations omitted). The probate court's decisions are generally reviewed for an abuse of discretion. See *id*; *In re Duane v Baldwin Trust*, 274 Mich App 387, 396-397; 733 NW2d 419 (2007) (listing several probate court decisions subject to abuse-of-discretion review), criticized on other grounds 480 Mich 915; 739 NW2d 868 (2007). "An abuse of discretion occurs when the decision resulted in an outcome falling outside the range of principled outcomes." *Hayford v Hayford*, 279 Mich App 324, 325; 760 NW2d 503 (2008). "An error of law necessarily constitutes an abuse of discretion." *Denton v Dep't Of Treasury*, 317 Mich App 303, 314; 894 NW2d 694 (2016). [*In re Estate of Huntington*, 339 Mich App at 17.]

We also review de novo whether a person has been afforded due process. *Elba Twp v Gratiot Co Drain Comm'r*, 493 Mich 265, 277; 831 NW2d 204 (2013).

III. ANALYSIS

Sprague first argues that the trial court erred by denying his motion for JNOV on the ground that Christopher presented insufficient evidence to establish that Matthew lacked capacity to execute the subject estate planning documents. We disagree.

"A firmly embedded principle in our jurisprudence is that legal documents must be executed by one possessing the mental competence to reasonably understand the nature and effect of his action." *Persinger v Holst*, 248 Mich App 499, 503; 639 NW2d 594 (2001). A person "must, generally, possess sufficient mind to understand in a reasonable manner the nature and effect of the act in which the person is engaged." *Id*. (quotation marks and citations omitted). Our Supreme Court stated in *In re Thayer's Estate*, 309 Mich 473, 476-477; 15 NW2d 712 (1944):

> One of the well-established rules of law in this State is that any person has the right to make a will; and that so long as the person has the mental capacity to understand the business in which he is engaged, to know the extent and value of his property, to know the natural objects of his bounty and to keep these facts in mind

long enough to dictate his will without prompting from others, such a person has capacity to make a valid will.

Michigan's Estates and Protected Individuals Code (EPIC), MCL 700.1101, *et seq*., codified in MCL 700.2501when an individual has sufficient mental capacity to make a will:

(1) An individual 18 years of age or older who has sufficient mental capacity may make a will.

(2) An individual has sufficient mental capacity to make a will if all of the following requirements are met:

(a) The individual has the ability to understand that he or she is providing for the disposition of his or her property after death.

(b) The individual has the ability to know the nature and extent of his or her property.

(c) The individual knows the natural objects of his or her bounty.

(d) The individual has the ability to understand in a reasonable manner the general nature and effect of his or her act in signing the will.

Testamentary capacity is presumed. *In re Powers Estate*, 375 Mich 150, 158; 134 NW2d 148 (1965). Whether a person has testamentary capacity "is judged as of the time of the execution of the instrument." *Id*. at 158. "Weakness of mind and forgetfulness are insufficient to invalidate a will if it appears that the mind of the testator was capable of attention and exertion when aroused and he was not imposed upon." *In re Paquin's Estate*, 328 Mich 293, 302; 43 NW2d 858 (1950). "The rule is clear that mental incompetency must be established as of the time the will is made in order to invalidate it." *In re Rowling's Estate*, 291 Mich 218, 224; 289 NW 136 (1939) (citations omitted). Michigan law has long held that the contestant bears the burden of proof to show by competent evidence that the testator did not have the mental capacity at the time of execution of estate planning documents like wills and trusts. *In re Johnson's Estate*, 308 Mich 366, 369-370, 13 NW2d 852 (1944). Our Supreme Court has "held that a question for the jury exists when there is testimony showing incompetence to make a valid will or undue influence exerted on the testator." *In Re Paquin's Estate*, 328 Mich at 303. "A verdict is not inconsistent if there is an interpretation of the evidence that provides a logical explanation for the findings of the jury." *McPeak v McPeak*, 233 Mich App 483, 492; 593 NW2d 180 (1999).

The record in this case does not demonstrate the insufficiency of evidence to establish Matthew's lack of mental capacity when he executed the estate planning documents at issue. The evidence at trial does not clearly preponderate in Sprague's favor as he contends. Christopher presented evidence of Matthew's traumatic brain injury and the resulting deficits he suffered thereafter, as well as evidence of significant changes in his ability to rationally comprehend current and historical events. Evidence demonstrated that he failed to recall numerous events and personal decisions he made after his brain injury. Evidence also indicated that Matthew held delusional beliefs regarding aspects of his life and relationships with family and friends. He did not merely forget his decision to live in an assisted living facility in Michigan, but departed from reality and

substituted paranoid, delusional thinking for actual facts supported by evidence and testimonies of witnesses that demonstrated that he selected and approved the facility. Matthew also denied that he had any mental issues. Medical records, however, established that he suffered from ongoing mental problems after his fall that diminished his memory and particularly affected his executive function abilities. Evidence also established that Matthew suffered from delusional, paranoid thoughts that were not supported by the facts and circumstances as evidenced by documents, medical records, and witness testimonies.

Peter A. Lichtenberg, Ph.D., the director of Wayne State University's Institute of Gerontology and Merrill Palmer Skillman Institute for Child and Family Development, and also a professor of psychology, provided expert testimony based on his extensive research and professional experience and his thorough review of Matthew's personal and medical history, as well as review of the recorded videos of Matthew's interaction with Barberi on different occasions spanning several months. Those videos, even to the untrained eye, raise questions of Matthew's testamentary capacity. The videos show that Matthew's attention drifted and he failed to know, remember, or understand the disposition of his property. One video in particular demonstrated Matthew's incapacity and confusion. Barberi abruptly terminated that recording. The videos also show that Barberi almost exclusively used leading questions to suggest and guide Matthew's responses. Matthew's responses indicate his susceptibility and vulnerability to suggestion and manipulation and lack of volition and insight to make his own decisions. When given the opportunity to speak unaided by leading questions, Matthew displayed an inability to understand what he intended for the disposition of his property and he demonstrated that he lacked awareness of his deficits and lack of memory of facts of his past. Matthew also made representations of facts that other evidence demonstrated were inaccurate and untrue. Dr. Lichterman provided expert testimony of his retroactive assessments regarding Matthew's mental capacity and vulnerability to undue influence. The evidence presented at trial supported Christopher's claim that Matthew suffered from incapacity at the time he executed the estate planning documents at issue.

Sprague presented some evidence of Matthew's capacity including Barberi's and his assistant's testimonies. Sprague's mother also testified regarding Matthew's satisfactory capacity to execute estate planning documents. Some of Matthew's neighbors and friends provided lay opinion testimonies that Matthew seemed normal to them after he returned to Michigan. Portions of the videos on which Sprague relied at trial could be considered to support Sprague's position that Matthew had testamentary capacity. Other portions of those videos, however, show Matthew's confusion, lack of memory, lack of clarity, and confabulation of facts. Barberi's almost exclusive use of leading questions and repetition, and lack of and obvious avoidance of using open-ended questioning, and stopping and restarting of recording when Matthew apparently did not perform as planned, even after hours of prerecording discussion and preparation, suggest that Matthew lacked the capacity to understand and lacked the ability to freely express himself in a rational and coherent manner. To the extent that Sprague presented evidence contrary to Christopher's evidence, the trial court appropriately submitted the issue of Matthew's capacity to the jury for its determination of this issue.

The record does not support Sprague's argument that the evidence preponderated in his favor. Close analysis of the trial evidence establishes that reasonable jurors could consider and weigh all of the evidence and conclude that a preponderance of evidence established that Matthew lacked the requisite mental capacity to execute the estate planning documents on the dates he

signed them.  Accordingly, the evidence supports the jury's verdict.  The trial court, therefore, did not err by denying Sprague's motion for judgment notwithstanding the verdict or for a new trial on the issue of Matthew's mental capacity.

Sprague next argues that the trial court erred by denying his motion for JNOV on the ground that Christopher presented insufficient evidence to establish that Sprague unduly influenced Matthew to execute the subject estate planning documents.  We disagree.

In *In re Sprenger's Estate*, 337 Mich 514, 521-522; 60 NW2d 436 (1953), our Supreme Court set forth the principles for determining whether undue influence warrants invalidating a will as follows:

> Undue influence exercised upon one who executes a will may become the basis for finding the will invalid if that influence took from the testator his right to freely exercise his discretion in disposing of his property.  Such influence is not to be presumed but must be proved by the person seeking to have the will declared invalid and cannot be found in the desire of some person or persons to influence the testator nor in the fact that the opportunity existed for the exercise of such influence.  It exists as a matter of law only where the influence is actually exerted and amounts to a constraint depriving the testator of his free agency.

> Undue influence to vitiate a will must have been such as to amount to force and coercion, destroying the free agency of the testator, and there must be proof that the will was obtained by this coercion.  Undue influence cannot be presumed, but must be proved, and in connection with the will and not with other things.  A will may not be set aside on the ground of undue influence unless such influence amounted to a degree of constraint such as the testator was too weak to resist and such as deprived him of his free agency and prevented him from doing as he pleased with his property.  Neither advice, nor arguments, nor persuasion will vitiate a will made freely from conviction, though such will might not have been made but for such advice or persuasion.  Undue influence is a species of fraud and, like fraud, must remain undefined by the courts.  All that can be done is to lay down certain general principles, and what is said above embraces those general rules which have been adduced from adjudicated cases.

> Undue influence cannot be predicated upon opportunity alone, nor upon a disposition of property not in accord with the statutes of descent. [Quotation marks and citations omitted.]

Our Supreme Court explained in *In re Mardigian Estate*, 502 Mich 154, 161; 917 NW2d 325 (2018), that a rebuttable presumption of undue influence may arise under limited circumstances:

> The presumption of undue influence is brought to life upon the introduction of evidence which would establish (1) the existence of a confidential or fiduciary relationship between the grantor and a fiduciary, (2) the fiduciary or an interest which he represents benefits from a transaction, and (3) the fiduciary had an

opportunity to influence the grantor's decision in that transaction. [Citation omitted.]

Even if a rebuttable presumption of undue influence has arisen, without exception, the burden of proof always remains with the contestant. *Id*. at 165-166; see also MCL 700.3407(1)(c) and (d). In *Bill & Dena Brown Trust v Garcia*, 312 Mich App 684, 701; 880 NW2d 269 (2015), this Court explained:

> But the presumption satisfies the burden of persuasion, so if a party opposing the allegation of undue influence fails to offer sufficient rebuttal evidence, then the party alleging undue influence will have met its burden of persuasion, i.e., its burden of showing the occurrence of undue influence. Generally, the fact-finder must assess whether sufficient evidence has been presented to rebut a presumption of undue influence. [Quotation marks and citations omitted.]

As a preliminary matter, Christopher asserts that a rebuttable presumption of undue influence arose in these cases and that Sprague failed to overcome that presumption. The record reflects that Christopher did not raise before the trial court the issue of the existence of a rebuttable presumption of undue influence and the trial court did not instruct the jury in this regard nor is there any indication that the jury considered that issue or rendered its verdict based upon the issue. Although the legal principle may have applied in this case had Christopher asserted it and the trial court considered and decided the issue, because he did not raise the issue and the trial court did not consider or decide its applicability, Christopher waived the issue and it is not properly before this Court. Accordingly, we decline to consider it.

Regardless, when considering the undue influence issue, the record establishes that Christopher presented direct and circumstantial evidence of Sprague's exertion of undue influence upon Matthew over the course of several months that swayed Matthew's will and volition. Evidence established that Matthew lacked capacity and was particularly vulnerable to Sprague's persuasion and manipulation. Sprague exercised a degree of control and influence over Matthew in his vulnerable state and engaged in a protracted effort to isolate Matthew from his family, control contacts with them, and influence Matthew to change his estate planning documents to reap an extraordinary personal benefit. Evidence indicated that Matthew had been estranged from Sprague for nearly a decade and Sprague reinserted himself into Matthew's life when Matthew began living in the assisted living facility upon Matthew's return to Michigan. Medical records indicated that Matthew suffered from deficits and changed personality and emotional instability after his traumatic brain injury. Evidence did not demonstrate that he recovered from such. Evidence indicated that Matthew's behavior became more and more paranoid, irrational, and delusional as time passed after Sprague came back into Matthew's life. Witnesses testified that Sprague fostered such to enable removing Matthew from the assisted living facility to his own home where he isolated Matthew further from his family and friends, and encouraged Matthew's alienation from his family, particularly his sons and their wives.

The record reflects that Sprague presented evidence to controvert the evidence presented by Christopher, predominantly that Barberi repeatedly asked Matthew if he had been influenced in any manner by Sprague to change his estate planning documents and Matthew denied being influenced. Sprague relied on the videos and Barberi's testimony in this regard. The videos and

Barberi's testimony on which Sprague relied at trial supported in part Sprague's position that Matthew made his estate planning on his own without undue influence. Portions of those videos, however, showed Matthew's confusion, lack of memory, lack of clarity, and confabulation of facts. The videos also indicate Matthew's vulnerability to suggestion and influence. Barberi's use of leading questions and repetition, and lack of open-ended questioning, stopping and restarting of recordings when Matthew apparently did not perform as planned, indicate that Matthew lacked the capacity to understand and lacked the ability to freely express himself in a rational and coherent manner and that he suffered from particular vulnerability to suggestion and manipulation. Nevertheless, to the extent that Sprague presented evidence to controvert Christopher's evidence regarding undue influence, the trial court appropriately submitted the issue to the jury for its determination.

A reasonable interpretation of all of the evidence leads to the conclusion that Sprague exerted undue influence through a pattern of conduct over an extended period aimed at isolating Matthew from his sons and other family members. Reasonable jurors could conclude that Christopher proved by a preponderance of the evidence that Sprague exerted undue influence upon Matthew sufficient to overpower his volition, destroy his free agency, and impel Matthew to act against his inclination and free will and change his estate planning documents to benefit Sprague.

Objective analysis establishes that reasonable jurors could consider and weigh all of the evidence and conclude that a preponderance of evidence established that Sprague unduly influenced Matthew to execute the estate planning documents at issue. Ample evidence supports the jury's verdict. The trial court, therefore, did not err by denying Sprague's motion for judgment notwithstanding the verdict or for a new trial on the issue of Sprague's exertion of undue influence.

Sprague argues that the trial court lacked subject-matter jurisdiction over the Lady Bird deed and lacked personal jurisdiction over him to act affecting his rights to Matthew's real property under the Lady Bird deed. Sprague's arguments lack merit. Sprague also argues that the trial court lacked subject-matter jurisdiction regarding the deed executed by Matthew and that all proceedings and the judgment regarding that deed were null and void, and that the trial court, therefore, erred by denying his motion for a new trial. We disagree.

Subject-matter jurisdiction refers to the types of cases and claims over which a court has judicial power and authority to act. *Usitalo v Landon*, 299 Mich App 222, 228; 829 NW2d 359 (2012). "A party may attack subject-matter jurisdiction at any time, and a proven lack of subject-matter jurisdiction renders a judgment void." *Id*. (citation omitted). Subject-matter jurisdiction does not depend on the correctness of a trial court's ultimate legal conclusions. *Id*. This means that an error in the exercise of jurisdiction must be distinguished from a want of jurisdiction. Once jurisdiction has attached, errors or irregularities in the proceedings do not render the judgment void—they cause it to be erroneous and subject to being set aside on appeal. *Id*. at 228-229.

Probate courts are courts of limited jurisdiction. *In re Geror*, 286 Mich App at 133. The probate court "is a court of limited jurisdiction, deriving all of its power from statutes." *Manning v Amerman*, 229 Mich App 608, 611; 582 NW2d 539 (1998). In determining jurisdiction, this Court looks beyond the choice of labels to the true nature of the claims. *Id*. at 613. "The jurisdiction of the probate court must be determined solely by reference to the statutes." *In re Mayfield*, 198 Mich App 226, 230; 497 NW2d 578 (1993). Under MCL 600.841(1)(a), probate

courts have jurisdiction as conferred under the EPIC, MCL 700.1101 *et seq*. The provisions in the EPIC are to be construed liberally and applied to promote its purposes and policies, including "[t]o discover and make effective a decedent's intent in distribution of the decedent's property." MCL 700.1201(b). The EPIC permits the admission of extrinsic evidence in order to determine whether the decedent intended a document to constitute his or her will. *In re Smith Estate*, 252 Mich App 120, 125; 651 NW2d 153 (2002).

MCL 700.1302 provides, in relevant part:

The [probate] court has exclusive legal and equitable jurisdiction of all of the following:

(a) A matter that relates to the settlement of a deceased individual's estate, whether testate or intestate, who was at the time of death domiciled in the county or was at the time of death domiciled out of state leaving an estate within the county to be administered, including, but not limited to, all of the following proceedings:

(i) The internal affairs of the estate.

(ii) Estate administration, settlement, and distribution.

(iii) Declaration of rights that involve an estate, devisee, heir, or fiduciary.

* * *

(b) A proceeding that concerns the validity, internal affairs, or settlement of a trust; the administration, distribution, modification, reformation, or termination of a trust; or the declaration of rights that involve a trust, trustee, or trust beneficiary, including, but not limited to, proceedings to do all of the following:

(i) Appoint or remove a trustee.

(ii) Review the fees of a trustee.

(iii) Require, hear, and settle interim or final accounts.

(iv) Ascertain beneficiaries.

(v) Determine a question that arises in the administration or distribution of a trust, including a question of construction of a will or trust.

Further, MCL 700.1303(1) provides, in relevant part, as follows:

(1) In addition to the jurisdiction conferred by [MCL 700.1302] and other laws, the court has concurrent legal and equitable jurisdiction to do all of the following in regard to an estate of a decedent, protected individual, ward, or trust:

(a) Determine a property right or interest.

-11-

* * *

> (h) Hear and decide a claim by or against a fiduciary or trustee for the return of property.

MCL 700.1303(3) explains that the "underlying purpose and policy of this section is to simplify the disposition of an action or proceeding involving a decedent's . . . estate by consolidating the probate and other related actions or proceedings in the probate court." The exclusive grant of jurisdiction under MCL 700.1302(a) is limited to matters that relate to "the settlement" of a deceased individual's estate, and MCL 700.1303(1) provides concurrent jurisdiction over various matters that do not directly relate to the settlement of an estate. The probate court has concurrent subject-matter jurisdiction to determine a property right or interest with regard to an estate of a decedent. MCL 700.1303(1)(a). Actions involving trusts may have characteristics of both in rem and in personam proceedings. *Mullane v Central Hanover Bank & Trust Co*, 339 US 306, 312; 70 S Ct 652; 94 L Ed 865 (1950). Generally, an action in rem is directed against the property itself or to enforce a right in property. *Detroit v 19675 Hasse*, 258 Mich App 438, 448-450; 671 NW2d 150 (2003).

The statutory provisions establish that the probate court had the power to consider the validity of testamentary and estate planning documents affecting the settlement and disposition of Matthew's property, including declare the rights in and to his real property, decide a claim seeking return of such property, and determine the right or interest in real property, because the claims and rights involved in the consolidated actions related to the estate of a decedent. The petitions in the will case and the trust case sought the setting aside of any estate planning documents executed by Matthew after 2011, and sought the determination of the disposition of Matthew's assets including his real property. The evidence at trial established that Barberi prepared a last will and testament, trust, and Lady Bird deed at the same time and for the express purpose of estate planning for Matthew. The Lady Bird deed, which provided for the conveyance of Matthew's real property after his death, therefore, fell within the ambit of the petitions and the claim for relief. The evidence also establishes that Matthew executed those estate planning documents on the same date. Barberi's testimony and his assistant and paralegal's testimony indicated that the Lady Bird deed served as a part of Matthew's overall estate planning. The trial court had subject-matter jurisdiction over the determination of the validity of the Lady Bird deed as part of those estate planning documents, and could appropriately submit the question of its invalidity to the jury along with its consideration of Matthew's incapacity and whether Sprague unduly influenced Matthew. The probate court, therefore, had subject-matter jurisdiction to enter judgment declaring the Lady Bird deed and other estate planning documents invalid based upon the jury's verdict.

Sprague argues further that the probate court lacked personal jurisdiction over him and that it violated his due-process rights because it did not give him notice of proceedings. We disagree.

Personal jurisdiction is "a court's power to bring a person into its adjudicative process." *Foster v Wolkowitz*, 486 Mich 356, 367 n 22; 785 NW2d 59 (2010). "Before a court may obligate a party to comply with its orders, the court must have in personam jurisdiction over the party." *Oberlies*, 246 Mich App at 427. A court may establish jurisdiction over a person through general or limited personal jurisdiction. *Id.* MCL 600.701 authorizes a court to exercise personal

jurisdiction over a person present or domiciled in the state when process is served and over a person who consents to the jurisdiction of the court.

Under MCL 700.3602, by accepting appointment as a personal representative of an estate, the "personal representative submits personally to the court's jurisdiction in a proceeding relating to the estate that may be instituted by an interested person." Under the various provisions of MCL 700.7202, a trustee of a trust submits personally to the jurisdiction of Michigan courts regarding any matter involving the trust, and beneficiaries of a trust are subject to the jurisdiction of Michigan courts regarding any matter involving the trust.

Under both the United States Constitution and the Michigan Constitution, a person may not be deprived of life, liberty, or property without due process of law. US Const, Am V; US Const, Am XIV; Const 1963, art 1, § 17. "Due process in civil cases generally requires notice of the nature of the proceedings, an opportunity to be heard in a meaningful time and manner, and an impartial decisionmaker." *Hinky Dinky Supermarket, Inc v Dep't of Community Health*, 261 Mich App 604, 606; 683 NW2d 759 (2004) (cleaned up). The notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Elba Twp v Gratiot Co Drain Comm*, 493 Mich 265, 287-288; 831 NW2d 204 (2013).

In the action related to the will, the record reflects that Sprague filed an application of informal probate of Matthew's will and identified himself as an interested party, devisee, and trustee and beneficiary of a trust. Sprague signed and filed an acceptance of appointment declaring that he accepted the appointment as the personal representative of Matthew's estate. In the petition in the action to set aside the will, Christopher identified Sprague as an interested party as personal representative. The record contains a proof of service stating that a copy of the petition was served on Sprague via care of counsel. The record indicates that Christopher served Sprague via counsel most if not every filing in the case. In the amended petition to set aside the trust, Christopher identified Sprague as an interest party as personal representative. The record contains a proof of service stating that a copy of the petition was served on Sprague via care of counsel. In the trust case, Sprague entered an appearance in pro se as a beneficiary of the trust. Sprague individually as a beneficiary of the trust demanded that Christopher provide him initial disclosures under the court rules. Sprague also individually filed a signed response to the amended petition in which he adopted the trustee's response for himself. As the trustee of Michael's trust, Sprague also responded to the amended petition. The record indicates that Christopher served Sprague filings in the case via care of counsel.

The record indicates that the probate court had personal jurisdiction over Sprague under the circumstances. The record also establishes that he had notice and opportunity to present his position respecting the matters before the probate court. The record does not support his contention that the court denied him due process in any way. Sprague had notice of all proceedings and opportunity to participate fully in the litigation in both cases.

Sprague also argues that the trial court ruled as a matter of law that the Lady Bird deed was a will. Examination of the record, however, does not support that contention. The record indicates that no party moved the court for such a ruling and the court did not make a specific ruling in that regard. The trial court submitted for the jury's consideration whether Matthew intended a

document to serve as a will and transfer property after his death as opposed to during his lifetime and included in its instructions M Civ JI 170.05 without reference to any specific document. The trial court did not instruct the jury that they were required to consider the deed a will or substitute will. The verdict form's specific questions did not state that the Lady Bird deed constituted a will or a writing intended as a will. The record reflects that the trial court considered the Lady Bird deed an estate planning document based upon the evidence presented at trial. The trial court charged the jury with the task of deciding whether Matthew had the requisite mental capacity when he executed the estate planning documents and whether Matthew executed those documents because of Sprague's undue influence. The trial court permitted the jury to consider whether Matthew had capacity to execute the deed and whether Matthew executed the deed as a result of Sprague's undue influence. The trial court did not err in this regard.

The jury decided that the estate planning documents, which evidence established included the deed, will, and trust, were executed by Matthew when he lacked capacity and resulted from undue influence exerted by Sprague. The jury set forth its decision regarding all of the estate planning document in the verdict form. The trial court properly entered judgment based upon the verdict rendered by the jury. Sprague's arguments regarding the deed lacked merit and were not grounds for granting Sprague a new trial.

In summary, the probate court had subject-matter jurisdiction over all of Matthew's estate planning documents including the deed and had authority to enter judgment regarding the validity of the estate planning documents based upon the jury's verdict. The petitions in the will case and the trust case challenged the validity of all estate planning documents executed by Matthew after 2011, which the evidence presented at trial included the deed, the will, and trust executed in 2020. The probate court also had personal jurisdiction over Sprague and the authority to determine his rights in Matthew's property because Sprague essentially consented to the personal jurisdiction of the court. The trial court did not err by denying Sprague a new trial on the deed because the invalidity of the deed had been adequately pleaded and proved by Christopher, and the jury properly considered the evidence presented at trial and determined that Matthew lacked the capacity to execute the deed and the deed resulted from undue influence by Sprague.

Affirmed.

/s/ James Robert Redford
/s/ Douglas B. Shapiro
/s/ Christopher P. Yates

-14-